THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WAYNE BANK AND TRUST CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  1:15-cv-428 |
| | ) | |
| INVESTORS TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Wayne Bank and Trust Co., by counsel, for its Complaint against Investors Title Insurance Company, states as follows:

## PARTIES

1.     Wayne Bank and Trust Company ("Wayne Bank") is incorporated in the State of Indiana and has a principal place of business in the State of Indiana.

2.     Investors Title Insurance Company ("Investors Title") is incorporated in the State of North Carolina and has its principal place of business in the State of North Carolina.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction as there exists complete diversity of citizenship between the parties pursuant to 28 U.S.C § 1332(a)(1), and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Further this Court may enter declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57.

4.     Venue is appropriate in this district and division pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The Loan, Insured Mortgage, and Subordination Agreement

5.      On November 5, 2008, Wayne Bank made a mortgage loan (the "Loan") to Diamond Investments, LLC ("Diamond) in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00), evidenced by a promissory note executed and delivered to Wayne Bank in the principal sum of $1,500,000.00, payable with interest at the initial rate of 6.250% per annum (and default rate interest of 21% per annum), in 36 consecutive monthly payments.  A true and accurate copy of the promissory note is attached and marked as "Exhibit A" (the "Wayne Bank Note").

6.      As security for the payment of the Wayne Bank Note, Diamond executed and delivered a real estate mortgage on November 5, 2008, to Wayne Bank (the "Insured Mortgage"), mortgaging to Wayne Bank the following-described property in Hamilton County, Indiana (the "Property"):

> LOT 2 IN MERIDIAN NORTH MEDICAL SUBDIVISION, SECONDARY PLAT, AS RECORDED AUGUST 11, 2003 IN PLAT CABINET 3, SLIDE 226, IN THE OFFICE OF THE RECORDER OF HAMILTON COUNTY, INDIANA.

The property is commonly known as 13590 North Meridian, Carmel, IN 46032.  Diamond was the owner of the Property at the time it executed the mortgage.

7.      The Insured Mortgage was conditioned on payment of the indebtedness created by the Wayne Bank Note, according to the terms and conditions thereof.

8.      The Insured Mortgage was recorded on November 25, 2008 in the Office of the Hamilton County Recorder as Instrument No. 2008058397. A true and accurate copy of the Insured Mortgage is attached and marked as "Exhibit B."

9.     The Loan was made for the purpose of refinancing the outstanding balance on a prior loan from First Indiana Bank, N.A. (the "First Indiana Loan") to Diamond, secured by a first lien mortgage on the Property, and $1,482,195.25 of the proceeds of the Loan were used to pay off the First Indiana Loan.

10.     In connection with the Loan, a loan policy of title insurance underwritten by Investors Title (the "Loan Policy") was issued to Wayne Bank, as the insured, by Title Center of Indiana, LLC (the "Title Agent"), an Indiana title insurance agent for Investors Title, which insured the lien of the Insured Mortgage as a first priority mortgage lien, in the amount of $1,500,000.00, on a 2006 American Land Title Association (ALTA) Loan Policy Form.    A true and accurate copy of the Loan Policy is attached and marked as "Exhibit C."

11.     Prior to making the Loan, the Title Agent learned of the existence of a second mortgage lien on the Property from Diamond to DC Investments, Inc. a/k/a DC Investments, LLC ("DCI"), dated June 26, 2003, recorded June 27, 2003 in Office of the Hamilton County Recorder as Instrument No. 200300061902, securing indebtedness in the amount of $900,000.00 (the "DCI Mortgage").  A true and accurate copy of the DCI Mortgage is attached and marked as "Exhibit D."

10.     The DCI Mortgage was junior in priority to the First Indiana mortgage and, so that it also would be and remain (after the Loan closing) junior in priority to the Insured Mortgage, it was necessary that DCI enter into a subordination agreement by which its mortgage lien be expressly subordinated to the Insured Mortgage.

12.     A subordination agreement (the "Subordination Agreement"), dated November 5, 2008, was executed and delivered by DCI to the Title Agent at or prior to the Loan closing, and recorded November 25, 2008 as Instrument No. 2008058399 in the Office of the Hamilton

3

County Recorder.  A true and accurate copy of the Subordination Agreement is attached and marked as "Exhibit E."

11.     The Subordination Agreement is specifically addressed in Schedule B, Part II of the Loan Policy, as follows:

**SCHEDULE B – PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinated to the lien of the Insured Mortgage:

*Mortgage from Diamond Investments, LLC, an Indiana Limited Liability Company to DC Investments, Inc., and Indiana Corporation in the amount of $900,000.00, dated June 26, 2003 and recorded June 27, 2003 as Instrument No. 200300061902.  Said mortgage subordinated by Subordination Agreement recorded November 25, 2008 as Instrument No. 2008058399.*

*UCC Financing Statement from Diamond Investments, LLC, Debtor to Wayne Bank and Trust Co., Secured Party, filed November 10, 2008 as Instrument No. UC08000524.*

12.     On November 5, 2008, the Title Agent for Investors Title conducted an insured closing of the Loan.  A true and accurate copy of the Settlement Statement prepared by the Title Agent for closing is attached as "Exhibit F."

13.     Following closing, the Title Agent caused the Insured Mortgage and the Subordination Agreement to be presented for recording in the Office of the Recorder of Hamilton County, Indiana, where they were recorded on November 25, 2008.   The Subordination Agreement was recorded shortly after the Insured Mortgage[1] in order to cross-

---

[1]  As shown in the Loan Policy, attached as Exhibit C, the intervening recorded instrument (Instrument No. 2008058398) is the Assignment of Rents from Diamond to Wayne Bank, also securing the Wayne Bank Note.

reference the Instrument Number of the Insured Mortgage to which the DCI Mortgage was thereby subordinated.[2]

**Default, Foreclosure, Fair Finance Bankruptcy,<br>Bankruptcy's Trustee's Claim and Settlement**

14.     The Loan went into default in 2010, and Wayne Bank filed suit to foreclose the Insured Mortgage against the Property in Hamilton County Circuit Court on August 26, 2010, under Cause No.: 29C01-1008-MF-1977 (the "Foreclosure Action").

15.     At all relevant times, Timothy S. Durham ("Durham") solely owned and controlled Diamond.  On June 20, 2012, an Indiana federal court jury found Durham guilty on fraud charges arising from his operation of Fair Finance Company ("Fair Finance").   On November 30, 2012, he was sentenced to 50 years in prison for those crimes.

16.     On February 8, 2010, after Fair Finance was shut down following a raid by the Federal Bureau of Investigation, creditors filed bankruptcy proceedings against Fair Finance, leaving more than 5,000 investors who collectively lost over $200 million.  Brian Bash was appointed the chapter 7 trustee for Fair Finance (the "Bankruptcy Trustee").  The bankruptcy case is on-going in the U.S. Bankruptcy Court for the Northern District of Ohio, captioned *In re Fair Finance Company*, Case No. 10-50494 (the "Bankruptcy Case").

17.     Between 2002 and 2010, Diamond received millions of dollars in loans from Fair Finance, both directly and through Fair Finance's 100% owner at the time, Fair Holdings, Inc. ("FHI"), and through or from FHI's 100% owner, DCI.  DCI was owned at the time by Durham

---

[2] On the face of the recorded Subordination Agreement (attached as Exhibit E) the Insured Mortgage Instrument number is hand written on the front page, to specifically identify the priority lien to which the DCI Mortgage is therein subordinated.

5

and James Cochran.[3]   The DCI Mortgage secured $900,000.00 of the indebtedness owed by Diamond to DCI.

18.    On June 16, 2010, the Ohio Bankruptcy Court issued an Order by which all of DCI's assets, including the DCI Mortgage, were assigned to the Bankruptcy Trustee and became part of the debtor's bankruptcy estate (the "DCI Bankruptcy Order").

19.    Following the DCI Bankruptcy Order, the Bankruptcy Trustee informed Wayne Bank that proceeding with the Foreclosure Action would violate the automatic stay under the Bankruptcy Code, and threatened to file an adverse claim against Wayne Bank in the U.S. Bankruptcy Court in Northern District of Ohio seeking to invalidate the Subordination Agreement as a fraudulent conveyance, thereby elevating the DCI Mortgage to the first priority position ahead of the Insured Mortgage.

20.    After extended negotiations with the Bankruptcy Trustee, and after informing Investors Title of the proposed settlement terms and rationale and obtaining its approval thereof, Wayne Bank entered into a settlement agreement with the Bankruptcy Trustee dated November 7, 2013 (the "Settlement Agreement").

**Eminent Domain Suit and Settlement**

21.    On March 30, 2012, the State of Indiana, acting through the Indiana Department of Transportation (the "State"), filed a Complaint for Appropriation of Real Estate in the Hamilton County Circuit Court, in connection with the improvement of U.S. Highway 31 in Hamilton County, Indiana (the "US 31 Project").  The State had determined that it was necessary to appropriate fee simple title to substantial portions of the Property adjacent to US 31 and 131st Street in order to carry out the US 31 Project.

---

[3] James Cochran was convicted and sentenced to 25 years in prison on charges arising from his involvement with Fair Finance.

6

22.     The State of Indiana made the Bankruptcy Trustee a party to the eminent domain proceedings because the Bankruptcy Trustee was the holder of, and successor in interest to, the property interests of Diamond and DCI.

23.     Following two mediation sessions and extended negotiations, Wayne Bank and the Bankruptcy Trustee settled the eminent domain lawsuit with the State establishing $800,000.00 (the "INDOT Settlement") as just compensation for the taking, and received payment on January 20, 2015.

24.     Wayne Bank provided periodic updates to Investors Title concerning the status of the eminent domain proceedings, mediations and negotiations and, prior to entering into the INDOT Settlement, informed Investors Title of the proposed settlement terms and rationale and obtained its approval.

25.     Pursuant to the Settlement Agreement referenced in Paragraph 20, the INDOT Settlement proceeds were split between Wayne Bank and the Bankruptcy Trustee, with the Bankruptcy Trustee receiving twenty percent (20%) or $160,000.00 and Wayne Bank receiving eighty percent (80%) or $640,000.00 (with each party absorbing its share of costs and expenses associated with the eminent domain proceedings).

**Judgment Lien Claimants**

26.     Liens were filed against the Property by two judgment lien claimants, Webster Business Credit Corporation ("Webster") and Donald D. and Joan L. Lyons (collectively, "Lyons"), during the period between the commencement of the automatic stay resulting from the Bankruptcy Trustee's succession to Diamond's and DCI's interests and the settlement of the Bankruptcy Trustee's claims pursuant to the Settlement Agreement.

27.     As a result of the Webster and Lyons' judgment liens, Wayne Bank and the Bankruptcy Trustee filed a first amended complaint in the Foreclosure Action, naming both Webster and Lyons as additional defendants, as required to in order to extinguish their claimed liens against the Property in the Foreclosure Action.

28.     Webster and Lyons filed answers in the Foreclosure Action challenging the validity, enforceability, and/or priority of the Insured Mortgage and the mortgages held by the Bankruptcy Trustee (which also had been recorded prior to the Webster and Lyons' judgment lien claims), and sought extensive discovery concerning the facts underlying the Insured Mortgage, the DCI Mortgage, and possible communications at any time between or among the parties thereto, including Wayne Bank, the Bankruptcy Trustee, DCI, Diamond, and Durham.

29.     After being informed by Wayne Bank concerning the Webster and Lyons' judgment liens, the filing of the first amended complaint, the answers filed by Webster and the Lyons and their requested discovery, Investors Title elected not to defend their claims.

30.     Wayne Bank filed a motion for summary judgment to foreclose the Insured Mortgage, which resulted in settlement negotiations culminating in a settlement with Webster and the Lyons, pursuant to which they consented to entry of a foreclosure judgment extinguishing their claimed liens in exchange for an aggregate payment of $10,000.00.

31.     Prior to concluding the settlement with Webster and Lyons, Wayne Bank informed Investors Title and the Bankruptcy Trustee of the terms and rationale for the settlement and it was approved by both Investors Title and the Bankruptcy Trustee.

### Foreclosure and Sale of the Property

32.     On August 21, 2014, Wayne Bank filed its praecipe for foreclosure sale in the Foreclosure Action, and the foreclosure sale was scheduled for November 20, 2014.

33.     Prior to the foreclosure sale, Wayne Bank informed Investors Title and the Bankruptcy Trustee that it intended to enter a credit bid of $1,000,000.00 at the foreclosure sale and to allow the Property to be sold to any higher bidder, and Investors Title and the Bankruptcy Trustee both approved Wayne Bank's bid strategy.

34.     No competing bids were received at the foreclosure sale and a sheriff's deed conveying the property to Wayne Bank was thereafter received by Wayne Bank.

35.     Soon after the foreclosure sale, Wayne Bank received an offer to purchase the property and negotiated a purchase and sale agreement with the offeror to sell the Property for $825,000.00.

36.     Before entering into the purchase and sale agreement for the Property, Wayne Bank informed Investors Title and the Bankruptcy Trustee of the offer received for the Property, the negotiations concerning price and other terms, and the terms of the final purchase and sale agreement, and both Investors Title and the Bankruptcy Trustee gave their approval.

37.     Closing of the sale of the Property occurred on December 31, 2014, and pursuant to the Settlement Agreement (referenced in Paragraph 20), the sale price was split between Wayne Bank and the Bankruptcy Trustee, with the Bankruptcy Trustee receiving fifteen percent (15%), or $123,750.00, and Wayne Bank retaining eighty-five percent (85%), or $701,250.00, less their respective shares of the costs of sale and the costs and expenses of the Foreclosure Action incurred after the effective date of the Settlement Agreement.

### Notice of Wayne Bank's Loan Policy Claim

38.     By letter dated May 13, 2011, having determined that the Bankruptcy Trustee's claims that the Subordination Agreement was invalid and the lien of the DCI Mortgage was, therefore, senior in priority over the lien of the Insured Mortgage, gave rise to a claim covered by

the Loan Policy, Wayne Bank provided notice to Investors Title of its policy claim, including copies of and discussion of the terms of the Loan policy and of correspondence from the Bankruptcy Trustee's attorney regarding its claims.  Wayne Bank also completed an on-line claim form on Investors Title's website at that time.  A copy of the letter dated May 13, 2011 is attached and marked as "Exhibit G."

39.     On May 16, 2011, Wayne Bank received a fax from Investors Title acknowledging receipt of Wayne Bank's claim under its Loan Policy, which assigned claim number "1101084" to Wayne Bank's claim.

40.     Thereafter, through numerous letters, emails, and telephone conferences with Investors Title's Claims Counsel, Wayne Bank's counsel informed Investors Title of all significant developments in regard to the Bankruptcy Trustee's claims and the Settlement Agreement, the eminent domain suit and INDOT Settlement, the Lyons and Webster's claims and settlement, the Foreclosure Action and the eventual foreclosure and sale of the Property (all as generally described in Paragraphs 14 through 38 above).

41.     Investors Title initially indicated that it was reserving judgment as to whether it would deny coverage or acknowledge coverage and defend the claims against Wayne Bank's title.  During the next three and one-half years, as Wayne Bank's counsel reported on the status of the various proceedings and restated Wayne Bank's intention to pursue a Loan Policy claim, Investors Title declined every opportunity to defend or take action to remove the respective claims attacking the priority of, and preventing foreclosure of, the Insured Mortgage.

42.     In connection with each of Investors Title's approvals of the litigation and negotiation strategies, settlements and foreclosure sale of the Property (as generally described in

Paragraphs 14-38 above), Investors Title continued to indicate that it had not yet finally determined whether or not the Loan Policy claims would be covered.

43.     Finally, by letter dated December 3, 2014, approximately two weeks after the foreclosure sale of the Property, Investors Title denied coverage of Wayne Bank's claims under the Loan Policy (the "Denial Letter").  A true and accurate copy of the Denial Letter is attached as Exhibit H."

44.     By an email letter dated December 5, 2014, Wayne Bank's counsel provided documents to Investors Title's counsel showing that, contrary to the statement in the Denial Letter that the Settlement Agreement was made without the knowledge or approval of Investors Title, the Settlement Agreement was in fact disclosed to and approved by Investors Title.  A true and accurate copy of that email letter is attached as "Exhibit I."

45.     By letter dated January 30, 2015, Wayne Bank responded to Investors Title's letter denying coverage, explaining and documenting its claims for indemnified losses and damages under the terms of the Loan Policy, and demanding payment of $550,000.00 within thirty (30) days pursuant to the terms of the Loan Policy (the "Payment Demand").  A true and accurate copy of the Payment Demand is attached as Exhibit J."

46.     Investors Title has failed to pay or offer to pay any amount in response to Wayne Bank's Payment Demand, nor has Wayne Bank provided any response whatsoever thereto.

## NATURE OF ACTION

47.     Wayne Bank seeks a declaration and adjudication of the obligations of Investors Title under the Loan Policy, and a judgment awarding money damages resulting from Investors Title's failure to defend, prosecute, or pay Wayne Bank's Loan Policy claims and indemnified losses under the Loan Policy.

## COUNT I

## REQUEST FOR DECLARATORY JUDGMENT

### Covered Claims Generally

48.     Wayne Bank incorporates by reference Paragraphs 1 through 47 of the Complaint.

49.     The Loan Policy provides, in pertinent part, the following:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, INVESTORS TITLE INSURANCE COMPANY, a North Carolina corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:
>
> 13.  The invalidity, enforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the title
>
> (a)     resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the land occurring prior to the transaction creating the lien on the Insured mortgage because that prior transaction constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights law; ...

Loan Policy of Title Insurance, Covered Risk 13.

50.     The Subordination Agreement was executed and delivered on or prior to the date of the Insured Mortgage as a prerequisite to closing and funding of the Loan to Diamond, and was specifically referenced in Schedule B – Part II of the Loan Policy, in which Investors Title expressly and affirmatively insured that the Insured Mortgage had priority over the DCI Mortgage.

51.     The Subordination Agreement was effective as between the parties thereto immediately upon execution and delivery at or prior to the closing and funding of the Loan

secured by the Insured Mortgage (notwithstanding the time of recording, which is necessary only for constructive notice to third parties)

52.     DCI's execution and delivery of the Subordination Agreement was a transfer "occurring prior to the transaction creating the lien of the Insured Mortgage," precisely within the language of Covered Risk 13.

53.     The Bankruptcy Trustee threat to file an adverse claim against Wayne Bank to invalidate the Subordination Agreement as a fraudulent transfer falls squarely within the terms of Covered Risk 13, because it sought to establish a "lack of priority" of the Insured Mortgage "resulting from the avoidance… of any transfer of all or part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws."

54.     Thus, the Bankruptcy Trustee's claim clearly constitutes a covered claim under Covered Risk 13 of the Loan Policy.

**Creditors' Rights Exclusion Inapplicable to Bankruptcy Trustee's Claim**

55.     Investors Title's Denial Letter states that the Bankruptcy Trustees' claim is excluded by the so-called Creditors' Rights Exclusion under the Loan Policy, which provides, in pertinent part, the following:

> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>
> 6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, **that the transaction creating the lien of the Insured Mortgage**, is (a) a fraudulent conveyance or transfer …

Loan Policy of Title Insurance, Exclusions from Coverage 6 (Emphasis added).

56. Thus, the Creditors Rights Exclusion applies only to claims that "the transaction **creating the lien of the Insured Mortgage**" is a fraudulent conveyance or fraudulent transfer.

57. The Bankruptcy Trustee never asserted or claimed that the transaction **creating** the lien of the Insured Mortgage is a fraudulent conveyance or transfer.  The Bankruptcy Trustee asserted that the Subordination Agreement was a fraudulent transfer because it was not a part of the Loan or Insured Mortgage transaction, but instead was a separate and distinct transaction with DCI in which DCI received no consideration for subordinating the DCI Mortgage.

58. Investors Title, directly or through its Title Agent, knew of the facts surrounding the Subordination Agreement and, instead of adding a special exception for losses resulting therefrom, included affirmative coverage over the DCI Mortgage based on the Subordination Agreement.

59. Therefore, the general Creditors Rights Exclusion has no application to the claims made by the Bankruptcy Trustee.

**Affirmative Coverage**

60. Schedule B – Part II of the Loan Policy provides the Insured Mortgagee with **specific affirmative coverage over the lien of the DCI Mortgage**, based expressly upon the Subordination Agreement, as follows:

> In addition to the matters set forth in Part 1 of the Schedule, the Title is subject to the following matters, and **the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage**:
>
> Mortgage from Diamond Investments, LLC, an Indiana Limited Liability Company to DC Investments, Inc., an Indiana Corporation in the amount of $900,000.00, dated June 26, 2003 and recorded June 27, 2003 as Instrument No. 200300061902.  **Said mortgage subordinated by Subordination Agreement recorded November 25, 2008 as Instrument No. 2008058399.**

14

Loan Policy, Schedule B – Part II (emphasis added).

61.     Investors Title expressly and affirmatively insured Wayne Bank against loss or damage sustained in the event the DCI Mortgage would be held to be "not subordinate to the lien of the Insured Mortgage."

62.     The Bankruptcy Trustee's claim that the Subordination Agreement constituted a fraudulent conveyance, if sustained, would have resulted in the DCI Mortgage not being subordinate to the lien of the Insured Mortgage and, therefore, constitutes a claim expressly and affirmatively covered by Investors Title's affirmative coverage added by Schedule B – Part II of the Loan Policy.

63.     Wayne Bank and Investors Title currently have a dispute over Investors Title's obligations under the Loan Policy, and Wayne Bank seeks a determination and declaration of the parties' rights, status, and obligations.

64.     This action is appropriate for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57.

WHEREFORE, Wayne Bank, by counsel, respectfully requests that the Court enter a declaratory judgment declaring that, (1) Covered Risk 13 of the Loan Policy insures Wayne Bank against damages or losses resulting from the Bankruptcy Trustee's claims attacking the priority of the Insured Mortgage, (2) the Creditors' Rights Exclusion under the Loan Policy does not apply to the claims asserted by the Bankruptcy Trustee, (3) notwithstanding any exclusions contained in the Loan Policy, Investors Title affirmatively and expressly insured Wayne Bank against damages or losses resulting from any claim that the lien of the DCI Mortgage was not

subordinate to the lien of the Insured Mortgage, including but not limited to the Bankruptcy Trustee's claims, and (4) all other proper relief.

## COUNT II

### BREACH OF DUTY TO DEFEND

65.     Wayne Bank incorporates by reference Paragraphs 1 through 64 of the Complaint.

66.     The invocation of the automatic stay arising out of the DCI Bankruptcy Order, precluding the prosecution of Wayne Bank's Foreclosure Action, combined with the Bankruptcy Trustee's serious threat of legal action, required Investors Title to take action within a reasonable time and diligently pursue actions to establish the priority of "the lien of the Insured Mortgage, as Insured or to prevent or reduce loss or damage to the Insured."  Loan Policy, Exhibit E, Conditions, Section 5(b).

67.     The Webster's and Lyons' claims adverse to the priority of the Insured Mortgage were asserted against Wayne Bank in the Foreclosure Action, in their respective answers and affirmative defenses filed March 12 and March 13, 2014, respectively, in response to the first amended complaint in the Foreclosure Action.  The duty to defend in the Loan Policy includes affirmative defenses or counterclaims.

68.     Investors Title failed and refused to defend or otherwise act to establish the priority lien of the Insured Mortgage as required by its obligations under the Loan Policy.

69.     Investors Title breached duties owed to Wayne Bank under the Loan Policy and Indiana title insurance law, and Wayne Bank suffered losses as a result.

16

70.     Wayne Bank provided notice to Investors Title and kept it informed as to the status of the adverse claims of the Bankruptcy Trustee, Webster and Lyons against the priority of the lien of the Insured Mortgage.

71.     Investors Title did nothing to defend or establish the priority of the lien of the Insured Mortgage, as insured, nor did Investors Title seek a judicial determination as to coverage.

72.     Having apprised Investors Title and obtained its approval as to the terms and rationale for the Settlement Agreement (with the Bankruptcy Trustee), and the settlement with Webster and Lyons, Wayne Bank entered into and implemented those settlements.

73.     Wayne Bank also informed the Title Company and obtained its approval as to the INDOT Settlement arising out of the eminent domain action brought by the State, the foreclosure sale credit bid strategy, and the eventual post-foreclosure sale of the Property.

74.     Wayne Bank is entitled to recover from Investors Title for its breach of the Loan Policy, and for its indemnified losses covered by the Loan Policy.

75.     The damages caused by Investors Title exceed the amount of $75,000, exclusive of interests and costs.

WHEREFORE, Wayne Bank, by counsel, respectfully requests the Court enter judgment in favor of Wayne Bank for damages sustained as a result of Investors Title breach of duties under the Loan Policy, and all other proper relief.

## COUNT III

## **BREACH OF CONTRACT**

76.     Wayne Bank incorporates by reference Paragraphs 1 through 75 of the Complaint.

77.     Investors Title has breached its obligations under its contract with Wayne Bank, i.e., the Loan Policy, by *inter alia,* after receiving notice from Wayne Bank of adverse claims against the priority of the Insured Mortgage, (a) failing to take action within a reasonable time and diligently establish the lien of the Insured Mortgage; (b) denying coverage of the adverse claims and failing to either (i) defend under a reservation of rights or (ii) file a declaratory action to determine whether or not coverage existed; and (c) failing to submit payment for indemnified losses and damages sustained by Wayne Bank and covered under the Loan Policy within thirty (30) days after receipt of Wayne Bank's demand for payment, as required by Section 11 of the Conditions set forth in the Loan Policy.

78.     The damages caused by Investors Title breach of contract exceed the amount of $75,000, exclusive of interests and costs.

WHEREFORE, Wayne Bank, by counsel, respectfully requests the Court enter judgment in favor of Wayne Bank for all damages sustained as a result of Investors Title breach of contract, and all other proper relief.

## <u>JURY TRIAL DEMAND</u>

Wayne Bank, by counsel, requests trial by jury on all appropriate claims and defenses.

Respectfully submitted,

HARRISON MOBERLY, LLP


_s/ Stephen E. Arthur_____
Stephen E. Arthur, Atty. No. 4055-49
Rory O'Bryan, Atty. No. 9707-49
Chad E. Oswald, Atty. No. 27279-49

Counsel for Plaintiff, Wayne Bank and Trust Company

HARRISON AND MOBERLY, LLP
10 W. Market Street, Suite 700
Indianapolis, IN 46204
sarthur@harrisonmoberly.com
robryan@harrisonmoberly.com
coswold@harrisonmoberly.com
Telephone: 317-639-4511
Facsimile: 317-639-9565

**Index of Exhibits**
**Pursuant to Local Rule 5.1(b)**

Exhibit A:      Wayne Bank Promissory Note  dated November 5, 2008

Exhibit B:      Wayne Bank Mortgage recorded November 25, 2008

Exhibit C:      Policy of Title Insurance

Exhibit D:      DCI Mortgage dated June 26, 2003

Exhibit E:      Subordination Agreement dated November 5, 2008

Exhibit F:      Settlement Statement dated November 5, 2008

Exhibit G:      Letter to Investors Title dated May 13, 2011

Exhibit H:      Investors Title's Denial Letter dated December 5, 2014

Exhibit I:      Email from Wayne Bank's counsel to Investors Title's counsel dated December 5, 2014

Exhibit J:      Letter from Wayne Bank to Investors Title dated January 30, 2015